UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEEN TELMONT,

        Plaintiff,

v.

        Case Number 07-14264-BC
        Honorable Thomas L. Ludington

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE RECORD AND AFFIRMING THE ADMINISTRATOR'S DECISION

Defendant Unum Life Insurance Company of America's ("Defendant") motion for judgment based on the administrative record is presently before the Court. On September 9, 2007, Plaintiff Kathleen Telmont ("Plaintiff") filed a complaint alleging Defendant did not fulfill its obligations under a life insurance policy to Plaintiff's brother Michael Telmont ("the Decedent"). The parties agree that the action is governed by Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*., and that the arbitrary and capricious standard of review applies.

The instant motion focuses on a discrete issue of plan interpretation arising from the plan's provision tying the Decedent's eligibility for a particular death benefit to his annual earnings. Plaintiff contends that Defendant misinterpreted the term "annual earnings" when it calculated the Decedent's death benefit. Plaintiff believes that "annual earnings" is reasonably defined during the first year of employment as the annualized salary the Decedent would have earned. Defendant, on the other hand, contends that the plan clearly defines "annual earnings" as the amount reported on the Decedent's most recent employer prepared W-2 tax form.

After reviewing the administrative record, the parties' briefs, and relevant authority, the Court concludes that Defendant's decision was not arbitrary and capricious. Thus, the Court will **GRANT** Defendant's motion for judgment based on the administrative record.

Although Defendant's motion was scheduled for hearing before this Court on August 13, 2008, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the briefs. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

The Decedent was employed by Payroll Solutions, Incorporated as a bartender in Las Vegas, Nevada. Administrative Record (AR) at 286. He began employment on June 1, 2004, and on July 1, 2004, the Decedent's employer provided him with life insurance coverage through Defendant. *Id.* The Decedent elected to insure himself with $100,000.00 of coverage and self-reported his "annual earnings" as $40,000.00. *Id.* Plaintiff's premiums were calculated for $100,000.00 of coverage. AR at 3. Plaintiff was the primary beneficiary of the policy. AR at 286.

The plan has a provision limiting the death benefit:

OVERALL MAXIMUM BENEFIT OF LIFE INSURANCE FOR YOU:

    The lesser of:
    -5 x annual earnings; or
    -$500,000.

AR at 347. The plan's definition section provides that "annual earnings" is the policy holder's "annual income received from [his or her] Employer as defined in the plan." AR at 300. The plan also contains the following definition of "annual earnings:"

WHAT ARE YOUR ANNUAL EARNINGS?

"Annual Earnings" means your average annual income as figured:

a. from the income box on your W-2 form which reflects wages, tips and other compensation received from your Employer for the calendar year just prior to the date of loss; or

b. for the period of your employment with your Employer if you did not receive a W-2 form prior to the date of loss.

Average annual income is your total income before taxes. It does not include deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from car, housing or moving allowance, Employer contributions to a qualified deferred compensation plan or income received from sources other than your Employer.

AR at 325 (emphasis omitted). Finally, the plan grants authority to Defendant to "interpret the terms and provisions" of the plan. AR at 350.

According to the complaint, the Decedent passed away in Inyo County, California on August 1, 2005. AR at 363. Although the circumstances of his passing are unclear, the Decedent was discovered in his car in a remote area of the California desert. AR at 44-49. According to the death certificate, the cause of his death was "a massive overdose of morphine." *Id.*

Defendant determined that the Decedent's W-2 tax form identified his reportable income for the year of 2004 as $15,542.45.[1] AR at 23, 284. Defendant determined, pursuant to the plan, that Plaintiff was entitled to a death benefit of $80,000.00. AR at 3. After Defendant denied Plaintiff's request for the $100,000.00 death benefit, Defendant concluded that Plaintiff's premiums were miscalculated and returned excess premiums to the Decedent's employer. *Id.*

---

[1] The copy of the Decedent's 2004 W-2 form contained in the administrative record is illegible. The parties, however, do not dispute that $15,542.45 was the amount listed on the 2004 W-2 form.

Defendant reasoned that the Decedent's annual earnings did not entitle Plaintiff to the entire amount. Rather, Defendant calculated the benefit by multiplying the income listed on the Decedent's W-2 form ($15,542.45) by five to reach the figure of $77,712.25. AR at 284. Defendant rounded the figure up to $80,000.00 and paid Plaintiff that amount plus interest. AR at 33.

On February 20, 2007, Plaintiff appealed Defendant's calculations of benefits, contending that she was entitled to a $100,000.00 death benefit. AR at 28. Defendant rejected Plaintiff's interpretation of the policy and did not submit an additional $20,000.00 payment. AR at 18-21. On October 9, 2007, Defendant removed Plaintiff's state court complaint to this Court. Dkt. # 1. Plaintiff also alleged a cause of action for intentional infliction of emotional distress ("IIED"). Ultimately, the Court granted Defendant's motion for judgment on the pleadings with respect to Plaintiff's IIED claim because ERISA preempts state law causes of action related to an ERISA governed plan. 29 U.S.C. § 1144; *see* dkt. # 31.

On January 25, 2008, Defendant filed a motion for judgment based on the administrative record pursuant to the Court's ERISA scheduling order. *See* dkt. # 28. Plaintiff filed a response brief, but did not file her own motion. Dkt. # 25. Upon the Court's approval, Defendant filed a reply brief. Dkt. # 29. Defendant's motion is presently before the Court.

II

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A court reviews an administrator's denial of benefits de novo unless "the plan clearly grants to the administrator discretion to construe the terms of the plan or to make benefit determinations." *Jones*

*v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). Previously, the parties agreed that the arbitrary and capricious standard of review applies to the administration of the Decedent's life insurance policy. Indeed, the plan expressly grants Defendant the authority to interpret the terms of the plan. This highly deferential review is appropriate when the ERISA-regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). A court must defer to an administrator's interpretation of ambiguous and general terms contained in a plan when the plan expressly grants the administrator such authority. *Jones*, 385 F.3d at 661.

Furthermore, courts "must take into consideration [a plan administrator] is acting under a potential conflict of interest because it is both the decision maker, determining which claims are covered, and also the payor of those claims." *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 292 (6th Cir. 2005) (*citing Marks v. Newcourt Credit Group*, 342 F.3d 444, 457 (6th Cir. 2003). Though the arbitrary and capricious standard "remains unchanged," courts should still consider the conflict of interest when "applying the standard." *Id.* (emphasis omitted). Indeed, the Supreme Court recently acknowledged that a court may consider the plan administrator's inherent conflict of interest when it is in the position of deciding a claim and responsible for payment of the claim. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. \_\_\_\_, 128 S. Ct. 2343, 2349-50 (2008). Thus, courts may

consider a variety of factors in reviewing whether a plan administrator's determination was arbitrary and capricious.

III

The sole issue is whether Defendant's interpretation of the term "annual earnings" was rationale in light of the plan's provisions. Upon review of the administrative record, Defendant's calculation of benefits was reasonable. The plan limited maximum benefits as the lesser of the following: five times the policy holder's "annual earnings" or $500,000.00. The Decedent elected to maintain $100,000.00 of coverage, which appeared to be within the plan's limits as he characterized his "annual earnings" as $40,000.00. The plan, however, provided two potential methods of determining "annual earnings." In this instance, a policy holder's "annual earnings" is derived "from the income box on [the policy holder's] W-2 form . . . received from [the policy holder's] Employer for the calendar year just prior to the date of loss." The date of loss occurred in August of 2005. Consequently, the amount listed on the Decedent's 2004 W-2 form serves as the "annual earnings." The parties agree that the amount listed on the W-2 form was $15,542.45. Although Plaintiff elected $100,000.00 of coverage, the policy limits total available coverage to five times annual earnings. Thus, under the terms of the policy, Plaintiff was only eligible for a maximum of five times of $15,542.45 ($77,712.25), which Defendant paid.

Plaintiff raises several arguments that are ultimately unconvincing. First, Plaintiff asserts that the term "annual earnings" is ambiguous because a policy holder that begins employment part way through the calendar year – similar to Plaintiff – is limited to the stated amount on the W-2 form regardless salary accrued over a twelve consecutive month period. Plaintiff urges the Court to construe any ambiguity "liberally in favor of the insured and strictly against the insurer." Dkt. # 25

at 6 (*quoting Citizens Ins. co. of America v. MidMichigan Health ConnectCare Network*, 449 F.3d 688, 692 (6th Cir. 2006)).

Plaintiff is correct that the manner that Defendant calculates "annual earnings" potentially reaches a figure less than a true twelve consecutive month salary during the first year of employment. However, the fact that proposition is true does not make the plan ambiguous. Defendant also emphasizes that *Citizens* is inapposite, because in that case the Sixth Circuit engaged in de novo review of conflicting terms in an ERISA guided policy and a no-fault plan. *Id.* at 690-91. Here, the highly deferential arbitrary and capricious standard of review is applicable. Additionally, the Court is not presented with conflicting provisions in two individual plans. Rather, the definition of a single term is disputed by Plaintiff, but the plan provides a clear definition. In light of the definition contained in the plan, Defendant's interpretation of "annual earnings" in the instant matter is not arbitrary or capricious.

Next, Plaintiff asserts that Defendant, as the plan administrator, has a direct financial interest in the outcome. Certainly, a court considers a potential conflict of interest. *See Metro. Life*, 128 S. Ct. at 2349-50. Yet, in this instance, Defendant determined the policy's benefits pursuant to the applicable provision in a rationale manner. Defendant's potential self-interest, in and of itself, is insufficient to demonstrate the decision was arbitrary or capricious. Similarly, Plaintiff alleges that Defendant breached its fiduciary duty. The records substantiates that Defendant interpreted the policy in a rationale manner and it did not breach its fiduciary duty. 29 U.S.C. § 1132(a)(3).

Ultimately, the plan grants Defendant the authority to interpret the terms and provisions of the plan. The plan, itself, provides a definition of "annual earnings" that is unambiguous. Although Plaintiff emphasizes Defendant's interpretation of the term leads to an inequitable result, Defendant

did not act in an arbitrary or capricious manner. Thus, the Court will grant Defendant's motion for judgment.

IV

Accordingly, it is **ORDERED** that Defendant's motion for judgment based on the administrative record [Dkt. # 23] is **GRANTED**. The decision of the plan administrator is **AFFIRMED**.

                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge

Dated: August 15, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2008.

                                s/Tracy A. Jacobs
                                TRACY A. JACOBS